**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**TELLUS OPERATING GROUP, LLC,**

*Plaintiff,*

v.

**GRACO FISHING AND RENTAL TOOLS, INC., *et al.*,**

*Defendants.*

CAUSE NO. 3:24-CV-176-CWR-LGI

**ORDER**

The parties have filed several *Daubert* challenges and related motions. The Court resolves them as follows:

**Background**

Tellus is the operator of an oil well in Stampede Field, Smith County, Mississippi. Tellus hired Reliable Production Service, L.L.C. ("Reliable") to provide a workover rig and personnel to conduct operations necessary to complete the well. Tellus also arranged for Graco to provide services, materials and equipment for purposes of the same completion operations. The equipment provided by Graco included sets of "MYT 40 Ton" elevators to run a type of steel pipe called "tubing" into the well or pull tubing out of the well, as needed. An MYT elevator is a piece of oilfield equipment that latches onto, holds, and lifts or lowers tubing that is either being run into or pulled out of a wellbore.

On September 22, 2023, Reliable's rig crew was using an MYT elevator that Tellus rented from Graco to pull tubing out of the well. The MYT elevator failed, popped open, and dropped thousands of feet of tubing and bottom hole assembly components several thousand

feet down the well. After the elevator failed, Reliable and Graco conducted "fishing operations" for approximately two months in an effort to pull the tubing and bottom hole assembly out of the well. While the tubing and bottom hole assembly were almost entirely recovered, an 8-foot-long spiral string mill remains stuck in the well at a depth of approximately 15,000 feet, just above the intervals perforated for production. Because the stuck spiral string mill cannot be recovered, diagnostic and remedial operations that are typically performed during the life of a well in Stampede Field to sustain and/or improve the recovery of oil by the well cannot be performed. The parties hired multiple expert witnesses, and the parties now challenge the opinions and testimony offered by many of those designated experts.

**Legal Standards**

The proponent of expert testimony must demonstrate that "it is more likely than not that [] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a); *see also Carlson v. Bioremedi Therapeutic Sys.*, 822 F.3d 194, 199 (5th Cir. 2016) ("An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'" (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999))). "District courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson*, 163 F.3d at 937 (quoting Fed. R. Evid. 702). Testimony that does not rest on relevant expertise "does not qualify as an appropriate expert opinion." *Taylor v. Detroit Diesel Realty, Inc.*, No. 3:12-CV-506-CWR-LRA, 2014 WL 2013348, at *3 (S.D. Miss. May 16, 2014). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Huss v.*

*Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*

Once satisfied the proposed expert is sufficiently qualified to testify, the Court then considers the twin requirements of relevance and reliability. "In *Daubert*, the Supreme Court instructed district courts to function as gatekeepers and permit only reliable and relevant expert testimony to be presented to the jury." *Wilson*, 163 F.3d at 937 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-93 (1993)).

"A party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (quoting Fed. R. Evid. 702); *see also United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015) ("The proponent of the expert testimony has the burden of establishing its admissibility." (citation omitted)).

**Discussion**

Given the number of *Daubert* motions, the Court, for clarity's sake, considers each challenge in turn, noting the proponent of each expert parenthetically.

***1. Dan Olds (Graco) & Mike McKenzie (Reliable)***

Tellus has moved to exclude Mr. Olds and Mr. McKenzie, petroleum engineers retained by Graco and Reliable, respectively, for their failure to apply the correct measure of damages. Docket No. 194. Because the nature of any damages sustained at the well remains in dispute, and because ascertaining the proper measure of damages will require making that determination, Tellus's motion, Docket No. 194, is denied.

Tellus asserts that the correct measure of damages is the "before and after" test. All parties agree that Mississippi has not adopted a specific measure of damages in the context of injury to an oil well and its reserves. That is not to say there are no indications of how the Mississippi Supreme Court would likely assess damages in a case like this.

Because the Court sits in diversity, in the absence of state substantive law on the subject, the Court must make an *Erie*-guess: a prediction as to how the Mississippi Supreme Court *would* treat the case, if given the opportunity. *See Mills v. Trustmark Nat'l Bank*, No. 3:19-CV-941-CWR-FKB, 2021 WL 785328, at *6 (S.D. Miss. Mar. 1, 2021) ("[I]n the absence of on-point Mississippi law, [the Court's] primary obligation is to make an *Erie* guess as to how the Mississippi Supreme Court would decide the question before us." (citing *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 243 (5th Cir. 2012))). "In making an *Erie*-guess in the absence of explicit guidance from state courts, this Court must attempt to predict state law, not to create or modify it." *Clemons v. United States*, Nos. 4:10-CV-209-CWR-FKB, 4:10-CV-210-CWR-FKB, 2013 WL 3943494, at *3 (S.D. Miss. June 13, 2013) (citing *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013)). "The standard for making an *Erie*-guess is familiar." *Mills*, 2021 WL 785328, at *6. As part of that determination, the Court must consider analogous Mississippi Supreme Court decisions, dicta, as well as the "rationales and analyses underlying Mississippi Supreme Court decisions on related issues." *Id.*; *see also Blakeney v. Great Escapes Pelahatchie, L.P.*, No. 3:24-cv-00528-CWR-LGI (S.D. Miss. June 24, 2026) (applying same).

*Bynam v. Mandrel Industries, Inc.*, 241 So.2d 629 (Miss. 1970), is instructive. There, the Mississippi Supreme Court offered the following guidelines regarding the measurement of damage to real property:

> As a general rule the measure of damages in actions for permanent injury to land where there is no willful trespass is the difference in value in the before-and-after damage to the premises. We have called attention to this rule repeatedly. It is also true that where the land, or buildings located on the property, has been damaged but the property may be restored to its former condition . . . the cost of restoration of the property, plus compensation for the loss of its use, may be the measure of damages. This rule, however, is usually confined to the introduction of evidence to show a reduction, and not an increase, of damages above the diminution in value of the land resulting from the injury.

*Id.* at 634 (cleaned up) (citations omitted). It is this Court's view that the Mississippi Supreme Court would, in line with its decision in *Bynam*, apply different measurements of damages based on the nature of the harm. The question is whether the injury to the subject real property was permanent or temporary, *i.e.*, whether the real property could be returned to its former condition.

The nature of the harm to the well in the present case remains in dispute. Tellus alleges the harm is permanent, while Graco and Reliable claim the damage is temporary. Determination of the nature of this injury will ultimately fall to the jury. It is therefore inappropriate to exclude Mr. Olds and/or Mr. McKenzie at this juncture. Tellus's motion, Docket No. 194, is denied.

**2. *Austin Perkins (Tellus)***

Graco moved to exclude Mr. Perkins, Docket No. 198, and Reliable moved to join Graco's motion "[t]o the extent not inconsistent with the positions asserted by Reliable in this litigation," Docket No. 212 at 1. In its response, Tellus withdrew "the expert witness report for and expert witness designation of Austin Perkins, because the subjects of his proposed opinions are addressed by other expert witnesses for Tellus." Docket No. 221 at 1. Because

Tellus has withdrawn Mr. Perkins, Graco's motion, Docket No. 198, and Reliable's motion to join the same, Docket No. 212, are denied as moot.

***3. Brian Sims (Tellus)***

Graco moved to exclude Mr. Sims, Docket No. 200, and Reliable again moved to join Graco's motion "[t]o the extent not inconsistent with the positions asserted by Reliable in this litigation," Docket No. 213 at 1. Reliable's request to join is granted. Because Mr. Sims is qualified to provide his proffered opinions and Graco's remaining challenges go to the weight of Mr. Sims's testimony rather than its admissibility, Graco's motion, Docket No. 200, is denied. To the extent Reliable intended its motion, Docket No. 213, to independently request exclusion, the motion is denied.

Mr. Sims is a petroleum geologist employed by Tellus. Graco first challenges Mr. Sims's admission on the basis that his experience as a geologist—as opposed to an engineer—is generalized and does not sufficiently support his proposed expert opinions. Tellus proposes to present testimony from Mr. Sims regarding the location, boundaries, subsurface features, and reservoir data for the two oil reservoirs at issue that underlie Stampede Field, the hydrocarbon pore volumes ("HCPV") of those two oil reservoirs, and volumetrics data he calculated for those two reservoirs. Graco's initial challenge is based entirely on the fact that Mr. Sims had never, before this case, performed this type of analysis. Although this may be the first instance in which Mr. Sims has performed this analysis, he appears to have a high degree of familiarity with the factors underlying that analysis (average porosity, oil saturation, and thickness of the oil reservoir), having calculated those factors "many, many times." Docket No. 225 at 6 (citation omitted). It also appears that he is familiar with the

method of using those three factors to determine the HCPV for a well,[1] and he knows how to use and apply that data to prepare HCPV maps and volumetric reports. Moreover, he has specifically worked with Stampede Field for many years. His work has included studying and interpretating geological data for Stampede Field, preparing geological maps for the oil reservoirs that underlie Stampede Field, "logging" each of the 12 wells drilled in that field, and providing geological information to support drilling prior to each well being drilled. Tellus has met its burden to demonstrate that Mr. Sims bases his opinions on appropriate qualifications and has sufficiently connected Mr. Sims's qualifications with his proposed opinions.

Graco's remaining challenges amount to a disagreement with the volumetrics methodology but fail to raise any concern that the methodology is unreliable or rejected by experts in the field. Tellus has demonstrated that Mr. Sims's methodology is in fact used in the field. Tellus identified testimony provided by two petroleum engineers, Mr. McKenzie and Mr. Windham, retained by Reliable and Tellus, respectively, that acknowledges the use of this methodology in the field. The Court is persuaded that Graco's attacks concern the weight rather than admissibility of Mr. Sims's proffered opinions. *See, e.g.*, *Slaughter v. Edney*, No. 3:20-CV-789-CWR-ASH, 2024 WL 4149762, at *4 (S.D. Miss. Sep. 11, 2024) ("Defendants will have the opportunity to vigorously cross examine [the proposed expert] on the facts and methods he relied on in forming his conclusions."). Graco's motion, Docket No. 200, is denied.

---

[1] Further supporting this conclusion, Mr. McKenzie, the petroleum engineer retained by Reliable, testified that Mr. Sims's calculations of HCPV and the HCPV maps Mr. Sims prepared "appeared reasonable." Docket No. 225 at 11 (citation omitted).

***4. Brian T. Windham (Tellus)***

Graco moved to exclude Mr. Windham, Docket No. 196, and Reliable again moved to join Graco's motion "[t]o the extent not inconsistent with the positions asserted by Reliable in this litigation," Docket No. 214 at 1. Reliable's request to join is granted. For the reasons that follow, Graco's motion, Docket No. 196, is denied. To the extent Reliable intended its motion, Docket No. 214, to independently request exclusion, it too is denied.

Tellus retained Mr. Windham, a petroleum engineer, to opine on the fair market value of the well and its oil reserves before and after the string mill became stuck.

Graco identified four bases for its requested exclusion of Mr. Windham: (1) he ignored the actual post-incident production of the well; (2) he applied an incorrect measure of damages; (3) his method for estimating the well's remaining reserves aren't "'fit' for this case"; and (4) he relied upon the opinions of Austin Perkins and Brian Sims, whose own opinions fail to satisfy *Daubert*. Docket No. 197 at 1-2.

Graco's first attack amounts to a disagreement with Mr. Windham's selection of January 10, 2024, in his before-and-after analysis, as the date to measure the "after value" of the well and its oil reserves.[2] Graco has not identified anything systemically improper with Mr. Windham's date selection. In other words, Graco has not pointed to any authority requiring the selection of a particular date for the "after value" in this case. Instead, Graco simply disagrees with the date Mr. Windham selected. Graco's attacks, based on that date

[2] Later in its brief, Graco rebrands this same argument as Mr. Windham's failure to validate his opinion with reference to post-incident production data and prior reserve reports. This is effectively the same attack, as it also critiques Mr. Windham for ignoring post-incident production of the well, and it too goes to weight rather than reliability; Graco will have an opportunity to attack Mr. Windham's date and data selections and his conclusions based thereon via cross-examination.

selection, bear on the weight the factfinder may give to Mr. Windham's testimony and conclusions, not on the reliability of the method he employed.

Graco's second attack is the mirror image of Tellus's attack on Mr. Olds and Mr. McKenzie, and it fails for the same reason.

Graco's third line of attack reads more like a series of cross-examination topics rather than a serious reliability challenge to any methodology Mr. Windham employed. Cross-examination is the proper vehicle through which Graco may explore these issues.

Next Graco criticizes Mr. Windham for relying on Mr. Perkins and Mr. Sims. First, Graco complains that Mr. Windham relied on Mr. Perkins's "opinions and assumptions not supported by the facts." Docket No. 197 at 16. Graco's challenge is merely a repackaged attack on Mr. Perkins, whom Tellus withdrew. Graco purports to challenge the accuracy of the data underlying Mr. Windham's analysis, but this is derivative of the argument that Mr. Windham relied upon an analysis performed by Mr. Perkins, rather than performing his own. *See, e.g.*, Docket No. 197 at 15-17 ("[T]he flawed data set flows from the fact that Perkins is not qualified to provide statistical analysis."). It appears to the Court, however, that Mr. Windham performed his own analysis of the data rather than simply relying on or adopting Mr. Perkins's opinions or analysis, and Graco has not persuaded the Court otherwise. Indeed, Graco has not provided an independent basis for challenging Mr. Windham's analysis in this attack.

As for the portion of this challenge based on work performed by Mr. Sims, Graco relies on the same arguments regarding Mr. Sims's opinion discussed by the Court above. Because the Court has declined to exclude Mr. Sims, the Court will not exclude Mr. Windham for relying upon Mr. Sims's work. Graco's motion, Docket No. 196, is denied.

*5. John Hadjioannou (Graco)*

Reliable moved to exclude Mr. Hadjioannou, a metallurgical engineer retained by Graco. Docket No. 204. Despite Reliable's argument to the contrary, Mr. Hadjioannou indeed employed methodology to reach his conclusions. Reliable's motion, Docket No. 204, is denied.

Graco argues that the elevator failure in this case did not occur without warning. It asserts there were two incidents that served as warnings that Reliable should have heeded prior to the elevator's catastrophic failure. Before the elevator's failure, the Reliable crew used the same equipment at issue to pull two stands of tubing from the well. It was on the third pull that the elevator opened, which caused the tubing to drop. Graco retained Mr. Hadjioannou, who opines that (1) a key component of the elevator was already significantly deformed prior to the elevator's ultimate failure and (2) that deformation was or would have been observable to Reliable's work crew upon proper inspection after the first and/or second hoists, which should have resulted in a work stoppage.

Reliable asserts that Mr. Hadjioannou's opinion was not the product of any particular methodology. If the methodology underlying Mr. Hadjioannou's opinions cannot be identified, the Court cannot perform its gatekeeping function of confirming that such methodology is reliable enough to permit Mr. Hadjioannou to testify. Graco, as the proponent of Mr. Hadjioannou's opinions and testimony, must demonstrate that he in fact employed a reliable method to reach his conclusions.

To support its claim, Reliable points to a handful of deposition excerpts that it claims show that Mr. Hadjioannou did not and/or could not identify any methodology he used to arrive at his conclusions. But this testimony Reliable points to merely amounts to Mr.

Hadjioannou admitting that he did not conduct a calculation. Mr. Hadjioannou does not admit to using no methodology whatsoever. The absence of a specific calculation or the failure to use a formula is not the same as entirely lacking methodology. Graco identified other methodology that Mr. Hadjioannou employed, namely, post-accident photography; post-accident inspection, including taking measurements and samples; destructive testing; metallurgical testing; reviewing testimony and reference publications, including OSHA regulations; and using collected data to create computer modeling of the elevators. Reliable never seriously challenged any of this methodology. Graco has rebutted Reliable's claim that Mr. Hadjioannou failed to base his conclusions on any methodology and carried its burden to establish that Mr. Hadjioannou's proffered opinions and testimony are sufficiently reliable to be admitted. *See Hankins v. Ford Motor Co.*, No. 3:08-CV-639-CWR-FKB, 2011 WL 6046304, at *4 (S.D. Miss. Dec. 5, 2011) (finding expert's detailed, on-site inspection and citations to sources reviewed, when combined with expert's experience, sufficient to survive a *Daubert* challenge); *see also, e.g.*, *Malone v. Spence*, No. 3:21-CV-2047-BH, 2023 WL 5106878, at *3 (N.D. Tex. Aug. 9, 2023) ("[The challenged expert's] opinions are not so fundamentally unsupported that they would not assist the jury in reaching an intelligent and sound verdict.").

The Court notes that, of course, any testimony must still comport with the rules of evidence. By denying this motion, the Court does not overrule any evidentiary objection contained in the briefing. *See, e.g.*, Docket No. 205 at 3 ("Even though he admitted that it would be difficult for the crew to observe any visible deformation to the safety pin, Hadjioannou still speculated that this was a possibility without any supporting evidence."). Reliable's motion, Docket No. 204, is denied.

### 6. *Richard Daab (Graco)*

Reliable moved to exclude the opinions and testimony of Richard Daab, an engineer retained by Graco. Because Mr. Daab failed to connect some, but not all, of his opinions to facts in the record, Reliable's motion, Docket No. 206, is granted in part and denied in part.

Mr. Daab failed to connect his opinion that the deformation of the elevator was visible to Reliable's work crew to supporting facts in this case. When questioned at deposition about whether there may have been grease on the elevator that could have obstructed the crew's view of the elevator's components, he asserted that there was not enough grease present to obstruct the crew's view but admitted that he lacked factual support for this conclusion. Docket No. 206-1 at 67 ("A. . . . I don't think there was enough grease on there [on the elevator] to hide the components. Q. What facts support that? A. What facts? Let me put it this way, in this particular case, I don't have the facts to support that."). Later in the same deposition, he reasserted that the deformation was visible to the crew but again admitted that he lacked factual support for this conclusion. *Id.* at 105 ("Q. You think they should have wiped off something or done something differently? A. I didn't say they should have wiped off anything. Q. What should they have done differently? A. I think it was visible, but that's my opinion. Q. Unsupported by the facts? A. Unsupported by the facts."). Furthermore, any conclusion offered by Mr. Daab that the deformity was in fact visible to Reliable's crew rests solely on the opinions of other experts in this case—Mr. Hadjioannou and Mr. Vandervort. Graco admits this. Docket No. 236 at 10. Mr. Daab may rely on those other opinions,[3] but he

---

[3] *See, e.g.*, *Natour v. United States*, No. H-23-234, 2024 WL 3687120, at *3 (S.D. Tex. Aug. 5, 2024) ("The facts and data on which an expert relies may include information that the expert did not personally gather, including the opinions of other experts." (citing Fed. R. Evid. 702 Advisory Comm.'s Notes to 2000 Amendments ("The term 'data' is intended to encompass the reliable opinions of other experts."))).

may not parrot them as if he independently reached the conclusion that the deformity was in fact visible to the crew. Allowing him to do so is misleading, cumulative, and unnecessary. That opinion is unconnected to the facts, and it is excluded. He may, however, testify to his conclusions that flow from his *assumption* that the deformity was visible. If a limiting instruction would assist the jury in distinguishing between Mr. Daab's conclusions and assumptions, the parties should be prepared to offer one.

Relaible's attacks on Mr. Daab's other opinions are unavailing. The remainder of Mr. Daab's opinions are sufficiently connected to the facts of this case and based on sufficiently reliable methodology. They are based on his review of American Petroleum Institute's standards regarding inspections; his review of testimony given in this case; his review of Reliable's operating manual and its policies, including its stop work authority procedure; his background in engineering; and his four decades of experience on oil and gas rigs. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (5th Cir. 2005) (affirming district court's conclusion that expert's "personal experience, training, method of observation, and deductive reasoning [were] sufficiently reliable to constitute 'scientifically valid' methodology"). Therefore, Reliable's motion, Docket No. 206, is granted with respect to Mr. Daab's opinion that the deformity was visible and denied in all other respects.

***7. Kurt Vandervort (Tellus)***

Reliable moved to exclude Dr. Vandervort, a mechanical engineer retained by Tellus. Both Tellus and Graco responded in opposition. Despite Reliable's argument to the contrary, Dr. Vandervort indeed employed methodology to reach his conclusions. Reliable's motion, Docket No. 208, is denied.

Similar to the opinions offered by Mr. Hadjioannou, Tellus retained Dr. Vandervort to opine that (1) the safety latch hook of the elevator that failed stretched and deformed during the process of pulling the first and second of three stands of tubing out of the well, with most of the stretching and deformation occurring while pulling the first stand and (2) the stretched and deformed safety latch hook was visible and could have been seen by members of Reliable's rig crew when, in response to the derrickman's two warnings that something was wrong with the elevator, Reliable's rig crew personnel twice opened and looked at the elevator, once after the first stand was pulled and again after the second stand was pulled.

Reliable's criticism of Dr. Vandervort's opinions are virtually identical to the criticism it levied against Mr. Hadjioannou's opinions, namely that Dr. Vandervort did not employ any methodology to reach his conclusions. This assertion is unsupported. Tellus summarized the methodology Dr. Vandervort employed:

> Dr. Vandervort took possession of the MYT elevator that failed and took it to Stress Engineering's testing facility in Houston, Texas. He took photos of the MYT elevator as received and conducted an initial nondestructive inspection. Dr. Vandervort and the mechanical engineering experts for Graco and Reliable then agreed on protocols to test the MYT elevator that failed and the rig's weight indicator that Reliable was using when the elevator failed. See Doc. 208-2 (Vandervort Report), pp. 23-35. At Stress' facility, and with the other mechanical engineering experts present, Dr. Vandervort participated in the further inspection and testing of the MYT elevator and the weight indicator, including a load test that the MYT elevator failed. The details of those tests are set forth in his report at Doc. 208-2, pp. 4-15, with additional supporting information at pp. 65-91. With the results of the test data, the experts for all three parties agree that the MYT elevator was defective and not fit for use.

Docket No. 227 at 4. Reliable does not take aim at any of this methodology; instead, it flatly claims that Dr. Vandervort employed no methodology whatsoever. This argument is unavailing. Tellus has carried its burden of establishing that Dr. Vandervort's proffered

opinions and testimony are sufficiently reliable to be admitted. *See Hankins*, 2011 WL 6046304, at *4 (finding expert's detailed, on-site inspection and citations to sources reviewed, when combined with expert's experience, sufficient to survive a *Daubert* challenge); *see also, e.g.*, *Malone*, 2023 WL 5106878, at *3 ("[The challenged expert's] opinions are not so fundamentally unsupported that they would not assist the jury in reaching an intelligent and sound verdict."). Reliable's motion, Docket No. 208, is denied.

**Conclusion**

The Court has considered all arguments; those not addressed would not have altered the outcome of any motions. Tellus's motion to exclude Mr. Olds and Mr. McKenzie, Docket No. 194, is denied. Graco's motion to exclude Mr. Windham, Docket No. 196, is denied. Reliable's motion, Docket No. 214, is granted with respect to its request to join Graco's motion to exclude Mr. Windham, but it is otherwise denied. Graco's motion to exclude Mr. Perkins, Docket No. 198, and Reliable's motion to join the same, Docket No. 212, are moot. Graco's motion to exclude Mr. Sims, Docket No. 200, is denied. Reliable's motion, Docket No. 213, is granted with respect to its request to join Graco's motion to exclude Mr. Sims, but it is otherwise denied. Reliable's motions to exclude Mr. Hadjioannou and Dr. Vandervort, Docket Nos. 204 and 208, are denied. Reliable's motion to exclude Mr. Daab, Docket No. 206, is granted in part and denied in part.

**SO ORDERED**, this the 21st day of September 2026.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE