**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **TELLUS OPERATING GROUP, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**GRACO FISHING AND RENTAL TOOLS, INC., *et al.*,**<br><br>*Defendants.* | CAUSE NO. 3:24-CV-176-CWR-LGI |

**ORDER**

Defendant Graco filed a motion for partial summary judgment and Defendant Reliable Production Service, L.L.C. ("Reliable") filed a motion for summary judgment. Docket Nos. 202 and 210. For the reasons that follow, both motions are denied.

**Background**

Tellus is the operator of an oil well in Stampede Field, Smith County, Mississippi. Tellus hired Reliable to provide a workover rig and personnel to conduct operations necessary to complete the well. Tellus also arranged for Graco to provide services, materials, and equipment for the same purposes. The equipment provided by Graco included sets of "MYT 40 Ton" elevators to run a type of steel pipe called "tubing" into the well or pull tubing out of the well, as needed. An MYT elevator is a piece of oilfield equipment that latches onto, holds, and lifts or lowers tubing that is either being run into or pulled out of a wellbore.

On September 22, 2023, Reliable's rig crew was using an MYT elevator that Tellus rented from Graco to pull tubing out of the well. The MYT elevator failed, popped open, and dropped thousands of feet of tubing and bottom hole assembly components several thousand

feet down the well. After the elevator failed, Reliable and Graco conducted "fishing operations" for approximately two months in an effort to pull the tubing and bottom hole assembly out of the well. While the tubing and bottom hole assembly were almost entirely recovered, an 8-foot-long spiral string mill remains stuck in the well at a depth of approximately 15,000 feet, just above the intervals perforated for production.

A dispute arose over who would bear responsibility for any damage to the well and/or the expense of the recovery operations. The dispute centers on which terms apply to the relationships between the parties.

Graco asserts that its relationship with Tellus, and by extension this dispute, is governed by the terms contained in a master service agreement entered into by Tellus and Globe Energy Services, LLC, dated May 20, 2015 (the "2015 Globe/Gravity MSA").[1] In late 2019/early 2020, Graco acquired some of Gravity's assets. In connection with that acquisition, Graco sent a letter to Tellus, dated December 20, 2019, wherein Graco offered to "perform services and provide goods and equipment under [Tellus's] current agreement with Gravity, subject to the terms and conditions thereof." Docket No. 215-1 at 4. The letter indicated that the offer could be accepted "by signing below and returning a signed copy of this letter to Graco Oilfield Services" at the address provided. *Id.* An employee working for Tellus signed that letter,[2] but the signed letter was never returned to Graco, and it appears that no one at Graco ever knew the letter had been signed.

---

[1] This master service agreement was originally entered into between Tellus and Globe Energy Services, LLC. The exact mechanism appears in dispute, but the parties agree that at a later point Globe's rights under that MSA transferred to Gravity Oilfield Services, Inc. Graco represents that Globe later merged with Gravity. Docket No. 191-1 at 4. Tellus represents that Globe simply changed its name to Gravity. Docket No. 216 at 2 n.1.

[2] Tellus claims this was a mistake and the employee should not have signed the offer letter.

Tellus asserts that its relationship with Graco is governed by the terms of a July 2007 master service agreement between Tellus and Graco (the "2007 MSA"). Beginning in December 2005 and continuing through at least August 2009, Graco provided tools and services for use on over thirty of Tellus's wells located in North Louisiana. Ted McFarland was a Fishing and Rental Tool Supervisor for Graco who handled Graco's business dealings with Tellus during that time for North Louisiana oil and gas wells operated from Tellus's Antioch Field office. Robby Roberson, an Assistant Production Foreman, was one of the Tellus employees who dealt with Mr. McFarland. On July 24, 2007, Mr. McFarland visited Tellus's Antioch Field office, met with Robby Roberson, and they filled out and executed the 2007 MSA.

Tellus and Reliable agree that their relationship is governed by a master service agreement dated February 12, 2001. (the "2001 MSA").

**Legal Standards**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

**Discussion**

The Court first considers Graco's motion for partial summary judgment, then turns to Reliable's motion for summary judgment.

***1. Graco's Motion for Summary Judgment on Certain Damages***

Graco seeks summary judgment on three issues: that (1) the 2007 MSA is invalid and not binding on Graco because, as Graco contends, Mr. McFarland, the Graco Fishing Tool Supervisor who signed the 2007 MSA, lacked authority to do so; (2) the 2015 Globe/Gravity MSA applies to the relationship between Tellus and Graco, and its terms preclude special, consequential, and exemplary damages; and (3) the form terms and conditions printed on the back of Graco's sales and service tickets preclude claims for those damages. The Court considers each issue in turn.

Graco and Tellus each brief the issues surrounding the 2007 MSA as if Louisiana law governs. A choice of law analysis is unnecessary as it relates to the issue of Mr. McFarland's apparent authority to execute the 2007 MSA. As the situs of contract execution and performance, Louisiana plainly has an interest in the 2007 MSA, and the law of the only other state with an apparent interest in the litigation—Mississippi—does not conflict with

Louisiana law on the issue of apparent authority.[3] *Compare Paratech, L.L.C. v. Nola Motor Club, L.L.C.*, 395 So. 3d 261, 267 (La. App. 5 Cir. 2018) (listing elements of apparent authority under Louisiana law, discussed *infra*), *with Newsome v. Peoples Bancshares*, 269 So. 3d 19, 29-30 (Miss. 2018) ("Mississippi law imposes a three-prong test for determining if apparent authority exists: (1) acts or conduct by the principal indicating the agent's authority; (2) reasonable reliance by a third party upon those acts or conduct; and (3) detrimental change in position by the third party as a result of such reliance." (citation omitted)). The Court therefore applies Louisiana law.

With respect to the first issue, viewing the facts in the light most favorable to Tellus, there are issues of fact as to whether Mr. McFarland had apparent authority to execute the 2007 MSA. "To establish apparent authority, Louisiana law requires two elements: 1) the principal must first act to manifest the alleged agent's authority to an innocent third party; 2) the third party must reasonably rely on the manifested authority of the agent." *Paratech*, 395 So. 3d 261, 267.

Mr. Roberson testified that when he wanted bids or services from Graco, he would call Mr. McFarland, who would then bring bid sheets to Tellus's Antioch Field office. Docket No. 232-3 at 11-12. Mr. Roberson continued that, if Tellus decided to proceed with a particular bid from Graco, Mr. Roberson would communicate that with Mr. McFarland. *Id.* at 12. Mr. McFarland was the only person at Graco that Mr. Roberson communicated with regarding

---

[3] Because this case is based on this Court's diversity jurisdiction, the Court consults the forum state's choice of law rules, when required, *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2014) ("When sitting in diversity, we apply the choice-of-law rules of the forum state—here, Mississippi—to determine which state's substantive law should apply."), and in Mississippi, "[c]hoice of law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation." *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006). No such conflict is present here.

bids or quotes. *Id.* at 13. In addition to providing these bid sheets, Mr. McFarland occasionally visited the Antioch Field office to solicit business from Tellus. *Id.* at 12-13. He always wore a Graco uniform; he drove a Graco truck; and he was the Graco employee who provided onsite supervision of Graco's work. *Id.* at 9-14. Tellus identified approximately $780,000 worth of business conducted between Tellus and Graco between 2005 and 2009 that Mr. McFarland handled. He also provided discounts for some of this business. Docket No. 232-1 at 100 (noting two discounted rates "per Ted McFarland approval").

From December 2005 until July 2007, Tellus and Graco did business without having a master service agreement. Mr. Roberson testified that in July 2007 he communicated Tellus's then-new position to Mr. McFarland that any contractor who wanted to provide work, services, or equipment to Tellus had to sign a master service agreement. Docket No. 232-3 at 28. According to Mr. Roberson, he told Mr. McFarland: "Hey, Ted, we've got to have this signed," to which Mr. McFarland responded, "Well, give it here. I'll sign it." *Id.*

Tellus identified other evidence in the record that suggests others at Graco were aware of the new requirement for a master service agreement, knew of the contents of the 2007 MSA, and knew that Mr. McFarland would execute the agreement on July 24, 2007. For example, the 2007 MSA called for Graco to carry certain types and amounts of insurance. On July 23, 2007, Graco's insurance agent faxed a certificate of liability insurance ("COI") to Mr. Roberson at Tellus's Antioch Field office, potentially demonstrating that Graco obtained insurance coverage as required by the MSA that was signed the following day. Docket No. 232-4. That COI names Graco as the insured, names Tellus as the certificate holder, and has typed-in special provisions that appear related to conditions called for by the 2007 MSA. That same day, Steve Ferris, Graco's Senior Vice President who handled master service

agreements and COIs for Graco, faxed the same COI to Tellus's Antioch Field office. Docket No. 232-6 at 1; Docket No. 232-5 at 40-42. This could suggest that Graco knew that Tellus needed this insurance—required by the 2007 MSA—very quickly, for work to begin. Docket No. 232-5 at 42 ("[T]here are times when, if I'm not in the office, someone will take the copy out that needs it immediately for a job and take a copy of it and send it to them.").

Tellus has met its burden to demonstrate the presence of genuine factual disputes with respect to (1) Graco's acts manifesting Mr. McFarland's authority to Tellus; and 2) the reasonability of Tellus's reliance on Graco's manifested authority of Mr. McFarland. Summary judgment is denied on this basis.

The second issue in Graco's motion is tied to a claim that it sought leave to add via amendment. The Court denied the requested leave for Graco's failure to diligently pursue that amendment. Docket No. 284. Moreover, the foregoing facts, as well as those discussed in the Court's denial of Graco's motion to amend, *id.*, cast sufficient doubt as to whether the terms of the 2015 Globe/Gravity MSA apply to Graco's relationship with Tellus, even if such claim had been properly pleaded. Summary judgment is inappropriate on this basis.

The third issue Graco identifies in its motion for summary judgment revolves around the terms contained on the back of its sales and service tickets. But if the 2007 MSA is applicable, it appears on its face to prohibit the application of those terms on the back of sales and service tickets. Docket No. 202-16 at 2 ("Agreement or stipulations in any such work order, delivery ticket, or other instrument used by [Graco] not in conformity with the terms and provisions hereof shall be null and void."). The foregoing facts relating to the applicability of the 2007 MSA therefore render summary judgment inappropriate on this basis as well. Graco's motion for partial summary judgment, Docket No. 202, is denied.

### 2. *Reliable's Motion for Summary Judgment*

Reliable points to a provision in the 2001 MSA that Reliable claims (1) requires Tellus to defend and indemnify Reliable with respect to Graco's crossclaim against Reliable, and (2) extinguishes Tellus's claims against Reliable as a matter of law. Because Tellus maintains a claim that Reliable breached the very agreement that Reliable now wishes to enforce, Reliable's motion is denied.

Reliable bases each of these two claims on the following contractual provision contained in the 2001 MSA:

> **[Tellus] agrees to protect, defend, indemnify and hold harmless [Reliable]**, its officers, directors, employees or their invitees, and any Customer for whom [Reliable] is performing services, from and **against all claims, demands, and causes of action of every kind and character without limit** . . . **without regard to the cause or causes thereof** or the negligence or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence of [Reliable], and any theory of strict liability and defect of premises . . . **arising in connection herewith in favor of** [Tellus's] employees, **contractors other than [Reliable]**, or subcontractors, or their employees, or any contractor's or any subcontractor's invitees (other than invitees of [Reliable]) **on account of** bodily injury, death, or **damage to property**.

Docket No. 143-2 at 7, 2001 MSA ¶ 7.3 (emphasis added). Reliable asserts that the foregoing requires Tellus to defend Reliable from and indemnify Reliable for the crossclaim asserted by Graco against Reliable and, because such a requirement would result in a "circle of indemnity," it extinguishes Tellus's claims asserted against Reliable as well. Docket No. 211.

By its own terms, the 2001 MSA is governed by Mississippi law. Docket No. 143-2 at 9, 2001 MSA ¶ 10.3 ("This Agreement shall be governed, construed and interpreted in accordance with the laws of the State of Mississippi."). The Court need not determine whether the above-quoted provision would apply to require Tellus to defend and indemnify Reliable at this stage in this case, because Tellus has claimed that Reliable materially breached

the 2001 MSA and, if proven, Reliable may not seek to enforce another provisions of the 2001 MSA against Tellus. "It is well established that a party's material breach of a bilateral contract excuses further performance by the other party." *Favre Prop. Mgmt. LLC v. Cinque Bambini*, 863 So. 2d 1037, 1044 (Miss. Ct. App. 2004); *see also Kanza Constr., Inc. v. Kan. City S. Rys. Co.*, 311 So. 3d 1246, 1251 (Miss. Ct. App. 2021) (quoting same). Because a genuine dispute remains regarding whether Reliable materially breached the 2001 MSA, summary judgment based on Reliable's request to enforce another provision of the same contract is inappropriate. Reliable's motion, Docket No. 210, is denied.

## Conclusion

The Court has considered all arguments; those not addressed would not have altered the outcome of any motions. Graco's motion for partial summary judgment, Docket No. 202, is denied. Reliable's motion for summary judgment, Docket No. 210, is also denied.

**SO ORDERED**, this the 29th day of September 2026.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE